[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The two defendants in this case of the Mohegan Tribe ofIndians of Connecticut v. the Mohegan Tribe and Nation, Inc., etal have brought cross claims against each other, each claiming the right to use the name "The Mohegan Tribe and Nation, Inc." For the sake of clarity, one will be designated the Standing Bear Group (Standing Bear) and the other the Fortin Group (Fortin).
Standing Bear brought a cross claim against Fortin and the latter also brought a cross claim against it. CT Page 11682
Standing Bear claims the following facts and makes the following arguments.
The Standing Bear group concedes that the Fortin Group initially, in 1992, incorporated the entity now known as "The Mohegan Tribe and Nation, Inc." Also clearly established at trial was that by notarized document dated February 15, 1996, Eleanor Fortin effectively turned over her leadership of the tribe and the corporation to Standing Bear. (Standing Bear Exhibit 1.) Thereafter, at a Special Grand Tribal Counsel Meeting dated February 18, 1996, Standing Bear was formally recognized as the sachem of the tribe by Eleanor Fortin and others who later became followers of her faction. (Standing Bear Exhibit 3.) Also at that meeting, the 1970 Constitution signed by John Hamilton was ratified. Not only did Eleanor Fortin recognize Standing Bear as the true tribal leader at the tribal counsel meeting on February 18, 1996, but she also signed a separate document ratifying the 1970 Constitution on February 27, 1996, and again on March 8, 1996. (Standing Bear Exhibits 4 and 5.) By letters dated March 12, 1996 and March 15, 1996, Standing Bear, on behalf of the tribe, sent letters to the United States Department of Health and Human Services, and to the State of Connecticut. At these times, Eleanor Fortin was still listed (presumably with her knowledge and consent) as a member of the tribal counsel on the tribe's letterhead. (Standing Bear Exhibits 6, 7 and 8.) At a meeting held on March 17, 1996, Standing Bear was authorized to sign checks on behalf of the corporation. Again, Eleanor Fortin was present at that meeting and acquiesced. From the time Standing Bear was recognized as the leader of the tribe, on February 15, 1996, until Eleanor Fortin left the tribe, sometime before April, 1996, the tribe took many actions and held several meetings. . Eleanor Fortin was an active participant in those actions and at those meetings and always recognized Standing Bear as the leader of the corporation and of the tribe. (Standing Bear Exhibits 11, 12, 13, 14 and 15.)
A search of the corporate records clearly indicates that the Standing Bear group is recognized as the rightfully elected officers of the Mohegan Tribe and Nation, Inc. (Standing Bear Exhibits 10 and 17.) Additionally, Eleanor Fortin admitted in her testimony that she was president of a new corporation called "Native American Mohegans, Inc." which was incorporated April 21, 1998. She also admitted that this new corporation which she envisioned "as moving her people forward" was the entity under whose purview her group would now be operating. (Standing Bear CT Page 11683 Exhibit 20.)
A search of the corporate records reveals that Mohegan Tribal Nation, Inc. is led by Standing Bear, while the new corporation, Native American Mohegans, Inc. has Eleanor Fortin as its president. Standing Bear has requested the court to maintain this status since the parties now appear to have operations without interference from the opposite group, no small achievement given the acrimony of the past several years.
This entire issue of leadership of Mohegan Tribal Nation, Inc. was brought before the United States Postal Service which found, by decree dated August 5, 1996, that Standing Bear was the rightful leader of the Mohegan Tribal Nation, Inc. and was entitled to receive its mail. (Standing Bear Exhibit 22.)
Fortin claims the following facts and makes the following arguments.
It is uncontested that Eleanor Fortin was an original incorporator and elected as the first president of the Mohegan Tribe and Nation, Inc.
On or about February 15, 1996, Standing Bear physically took control of the corporate offices on Yantic Street in Norwich and physically took possession of the contents of the offices, including the assets of the Mohegan Tribe and Nation, Inc. and the personal property of the individual members of the Fortin Group.
In a letter to the Secretary of State dated March 15, 1996, Standing Bear notified the state that the new officers of the Mohegan Tribe and Nation, Inc. were Moigu Standing Bear, president; Kenneth H. Watrous, Jr., vice president; and Christy Johnson, secretary. (Defendant Standing Bear Exhibits 7 and 10.)
After taking control of the Mohegan Tribe and Nation, Inc. in February, 1995, Standing Bear notified Eleanor Fortin and Harry Baker that they were no longer corporate officers or directors. (Testimony of Eleanor Fortin and Harry Baker.)
The removal of officers and directors by Standing Bear was done without calling a general membership meeting of the Mohegan Tribe and Nation, Inc. (Testimony of Eleanor Fortin, Harry Baker and Christy Johnson.) CT Page 11684
On April 22, 1996, a general membership meeting of the Mohegan Tribe and Nation, Inc. was held. Notice was mailed to all known members and also published in the Norwich Bulletin. At said general membership meeting, Eleanor C. Fortin was elected president; Harry J. Baker, Sr., vice president; Dale A Fowler, secretary; and Curtis A. Spicer, treasurer. (See Fortin Exhibits B, C, D and E.)
On May 1, 1996, Standing Bear filed with the Secretary of State a change of name of the corporation from "The Mohegan Tribe and Nation, Inc." to the "Confederation of the Mohegan-Pequot American Nations and Affiliated Tribes, Inc." Said action was taken without the benefit of a general membership meeting called for that purpose. (Testimony of Standing Bear.)
Prior to the takeover of the corporation by Standing Bear, the Mohegan Tribe and Nation, Inc. had received three ANA grants from the federal government. Said ANA grants are made by the U.S. Department of Health and Human Services to entities which have their intent to apply for federal recognition as Native American tribes with the Bureau of Indian Affairs at the U.S. Department of Interior. Said grants are used to develop the genealogy and anthropology reports necessary to support a petition for recognition. (Testimony of William Sears, Clayton Price and Eleanor Fortin.)
At the time of the corporate takeover by Standing Bear, the Mohegan Tribe and Nation, Inc. was on its third grant. The bank accounts with said grant monies were taken over by Standing Bear. Because of the inability of the Fortin Group to make a final audit report in the ANA grant, due to lack of access to records, the Fortin Group has not been able to receive another ANA grant. The Fortin Group has been approved for another ANA grant, subject to the satisfactory final account report on the last grant made to the Mohegan Tribe and Nation, Inc. (Testimony of Eleanor Fortin.)
On or about March 2, 1998, Standing Bear inquired to BIA about taking over the letter of intent to petition filed with BIA on behalf of the Mohegan Tribe and Nation on October 6, 1992, by Eleanor Fortin. The BIA determined that the Confederation of the Mohegan-Pequot American Indian Nation and Affiliated Tribes, Inc., a/k/a Mohegan Tribe and Nation, Inc., was a recently formed group constituting a faction of the original petitioning group. CT Page 11685 BIA has continued to deal with Eleanor Fortin and the Fortin Group in this regard. (Fortin Exhibit J dated April 16, 1998; and Fortin Exhibit G, Petition No. 129 on p. 8.)
The Fortin Group, because of the conditions set forth above, have now formed a Connecticut corporation known as the Native American Mohigans, Inc. to carry on its affair and BIA petition. (Testimony of Eleanor C. Fortin and Standing Bear Exhibit 17C.) Said corporation is not a party in this action.
Fortin claims that Standing Bear wrongfully took over the corporate offices on February 15, 1996, by physically moving into the premises and discharging Eliam Fortin and others. Standing Bear claims that Fortin voluntarily turned over the leadership to him, recognized him as John Hamilton's son and Grand Sachem of the tribe and continued working with him until April, 1996, on tribal matters.
Fortin's only attack on Standing Bear's leadership consists of its claim that no meeting of the tribe was held to elect officers of the Mohegan Tribal Nation, Inc.
Connecticut General Statutes § 33-1089 provides the only remedy to determine validity of any election of any officer of a corporation. Owen v. Schinelli, 20 CONN. L. RPTR. 219, 1997 WL 535248 (Conn. Super). The Fortin Group has not proceeded under the statute and is therefore barred from obtaining relief under said statute. Additionally, the Fortin Group has not cited the statute in its pleadings and therefore cannot take advantage of same. Connecticut Practice Book § 10-3. A second response to the Fortin Group's claim that it was "banished" from the tribe is that it did not comply with the provisions of Connecticut General Statutes §§ 47-66i and 47-66j which provide for a method of resolving intra-tribal disputes. Golden HillPaugussett Tribe of Indians v. Town of Southbury, 651 A.2d 1246,231 Conn. 563 (1995); Paucatuck Eastern PequotIndians of Connecticut. et al v. Connecticut Indian AffairsCouncil, et al, 18 Conn. App. 4, 555 A.2d 1003 (1989).
The court finds that Fortin herself initiated the change in leadership which was voted into effect on February 18, 1996. The court also finds that Standing Bear is the duly elected leader of the tribe. It also rules that this court has no power to interfere with the exercise of tribal self government. CT Page 11686
Federal and state law require "the courts to treat bona fide Indian tribes as sovereign nations and to protect tribal rights to self-determination." Golden Hill Paugussett Tribe of Indiansv. Town of Southbury, 231 Conn. 563, 574.
Fortin has now assumed leadership of a new corporation, "The Native American Mohigans, Inc." The two groups have achieved the ability to coexist under separate leaders and separate corporate identities. The court recognizes Standing Bear as the leader of the Mohegan Tribe and Nation, Inc. with the sole right to use that name.
Regarding the Fortin Group's cross claim, the court finds that Standing Bear did not seize the corporate offices and assets wrongfully as Fortin claims. The court finds that he was duly elected, formally recognized as the sachem of the tribe by Eleanor Fortin herself. She also signed a separate document ratifying the 1970 Constitution on February 27, 1996, and again on March 8, 1996. On March 17, 1996, Eleanor Fortin was present and acquiesced when Standing Bear was authorized to sign checks on behalf of the corporation. From February 15, 1996, when Standing Bear was recognized as leader of the tribe, until she left before April, 1996, Fortin participated in actions of the tribe and at meetings always recognizing Standing Bear as the leader of the corporation and the tribe.
For all of the above reasons, the court enters judgment in favor of Standing Bear on its cross claim against Fortin and also enters judgment in favor of Standing Bear as defendant in the cross complaint of the Fortin Group.
D. Michael Hurley Judge Trial Referee